## William Cole v. The State.

### *No. 738. Decided November 11.*

**1. House of Correction and Reformatory — Verdict, when Accused is Under Sixteen Years of Age — Construction of Statute.** In the Act of 1889, section 12, with regard to punishment of minors in the house of correction and reformatory, it is provided, that when the accused is 16 years of age or less, and the punishment for his offense, under the general law, would be confinement in the penitentiary for five years or less, he shall be confined in the reformatory, provided " the jury shall say, in their verdict, whether the convict shall be sent to the reformatory or the penitentiary." *Held*, that while it is mandatory that the jury shall, in the verdict, specify the place of punishment, it is not necessary that the verdict should state the finding of the jury as to the age of defendant.

**2. Same.**—In cases coming within the statute above cited, if the verdict fixes the punishment in " the house of correction and reformatory," it necessarily follows that the jury have found the age to be 16 or less years; and where the verdict confines him in the penitentiary it is wholly immaterial whether he be over or under 16 years of age: the verdict is sufficient as to that question.

**3. Evidence, Conflict in—Practice on Appeal.**—Where the evidence adduced on the trial is so conflicting as that it might have justified either a conviction or acquittal, the court, on appeal, is not authorized to disturb the finding of the jury.

Appeal from the District Court of Bell.    Tried below before Hon. W. A. Blackburn.

The indictment contained two counts; one for rape upon a female under the age of 12 years, and one for assault with intent to commit rape upon a female under the age of 12 years.

At the trial the prosecution was had upon the second account, for assault with intent to commit rape, and appellant being convicted of that offense, his punishment was assessed at a term of two years in the penitentiary.

The evidence being directly conflicting, we deem it only necessary to give the testimony of the prosecutrix and that of defendant, both of whom were, in many particulars, corroborated by the respective witnesses for the prosecution and defense.

Lola A. Norman, a witness for the State, sworn, said:  My name is Lola A. Norman.  I am 9 years old; I have been to school and can read in the second reader.  I know it is wrong to tell a lie, because my father told me it was.  The bad man would get me for telling lies, and I am going to tell the truth.  I went to school to Aunt Mollie Still this year. I remember the day that Will Cole dragged me into the cow pen.  I was going home from school in the evening, and passed by Mr. Cole's house, and saw Will Cole in the yard by the bee gums.  After I passed the house Will Cole caught up with me by the cow pen, and told me to come in the cow pen; that he had something to show me.  I told him I would

not do it; and he said yes I would, and took me by the arm and pulled me in the cow pen. Then he said to me that he would give me a dime to let him fuck me, and I told him I was not going to do it, and that he must turn me loose. Will Cole then threw me down on the ground in the cow pen, unbuttoned my drawers, and got on me. I saw his peter in his hand; he put his peter against me right here (placing her hand on her private parts) and pushed against me. He pushed on me hard, and tried to get it in, but he did not. He did not hurt me, but he tried to. He "pead" on me, and the "pea" looked like milk on my underclothes. I was crying all the time, and when he got up he said, "Yonder comes ma." He told me if I would hush crying he would not do me that way any more this school, but if I did not, he would do me that way every evening. I then went on home and told my ma what Will Cole had done. I went back to school on Monday. It was Friday evening when that happened. I was with my cousin, Mary Lizzie Norman, just before we got to Mr. Cole's house. The other children were ahead of us; Mary Lizzie went on and left me before we passed Mr. Cole's. The road forks by Mr. Cole's cow pen, and Uncle Billie Norman's children go one road and we go the other. My cousin Delilah Norman was ahead of Mary Lizzie and me. Will Cole was not playing ball in the yard when I passed. I did not see him with a ball that day. I had seen him with a thread ball at school before that day. Nobody told me what to say here to-day. My papa talked to me about it, and told me I would have to tell all about it here, and he never told me what to tell. He told me to tell the truth about it. This all happened in Bell County, Texas, March 3, 1893. I did not say in Killeen, on examining trial, that Will Cole put his peter into me a little, but did not hurt me but a little bit.

William Cole, the defendant, sworn, said: My name is William Cole. I was going to school to Miss Still on March 3, 1893. I left the school house before Jim Norman, and went home alone. The Norman children were at school when I left. I am in my sixteenth year, and weigh 130 pounds. I was at home when the Norman girls passed our house. Behind the others Lola came along by herself, and I was playing with my ball in the yard and it bounced over into the lane. Lola was passing. She ran and picked up my ball. I went into the lane and tried to take it away from her. I threw her down on her back, and then she threw the ball over into the yard. She got up mad and went off crying. There was trash in the lane where I threw her down. It was not at the cow pen I threw her down. It was about 50 yards from the cow pen gate where I threw her down. I did not take her by her arm and pull her into the cow pen; did not offer her a dime to let me do it to her. I did not throw her down in the cow pen, nor unbutton her drawers; nor did I get on top of her, nor pull up her clothes, nor try to put my pecker into her. I did not take my pecker out and pea on her. I had no idea of harming

her in any way. I never had any in my life; never did have anything to do with a woman. I never had a discharge from my pecker; I have got hair on it; the hair is short.

On cross-examination, State's counsel asked witness, "What color is that stuff that comes out of you?" Witness answered, "It is white." "How do you know?" "I know it because I have heard it was." I do not know whether I was man enough to take my ball from Lola without throwing her down and hurting her or not. I weigh 130 pounds, and I guess she weighs about 60 pounds. There was nobody at all about the place when I threw her down but her and me. My mother came up in a short while after Lola left.

The court in its charge correctly submitted the law to the jury with reference to the age of the defendant and the question of punishment, whether in the reformatory or in the penitentiary.

The verdict of the jury was, "We, the jury, find the defendant guilty as charged in the indictment, and assess his punishment at two years in the penitentiary."

*McMahon & McMahon*, for appellant.

*R. L. Henry*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of assaulting a child under 12 years of age, with intent to ravish her, and his punishment assessed at two years confinement in the penitentiary.

1. A reversal of the judgment is urged, because the verdict failed to state the finding of the jury as to the age of defendant, and because the evidence is insufficient to support the conviction.

With reference to the first contention, we think the verdict sufficient; that it is not necessary the jury should state the age of the defendant in their verdict. The Act of 1889, page 97, section 12, provides, that when the accused is 16 years of age or less, and the punishment is confinement in the penitentiary for five years or less, he shall be confined in the reformatory, providing "the jury convicting shall say in their verdict whether the convict shall be sent to the reformatory or the penitentiary." This latter provision is mandatory, and the jury must specify the place of confinement. But it has not been held, nor, indeed, is it true, that it is necessary to state in the verdict the finding of the age of the defendant. A general verdict is usually sufficient, and is so unless there is some provision or requirement of law making it necessary to make a special finding. While it is necessary that the provisions of the cited section should be given in charge, in regard to the age of the accused, as was done in this case, so as to direct the jury as to the discretion and duty devolving upon them in fixing the place of punishment, it does not fol-

low that their conclusion as to such age should be stated in the verdict. If his punishment is fixed at confinement in the " house of correction and reformatory," it necessarily follows that they have found the age to be 16 or less years; and if they confine him in the penitentiary, it is wholly immaterial whether he be over or under 16 years of age. For if he be less, the jury have the discretion to place him in the penitentiary, and if he be over that age, it necessarily follows that he be sent to the same place. We think that it was unnecessary for the verdict to state the age of the defendant under said section 12, cited.

2. There is a serious conflict in the evidence. The testimony for the State fully sustains the conviction, while that introduced by the defense would have justified an acquittal. Under such a state of case, we would not be authorized to disturb the finding of the jury.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.